IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>JUAN PENA-FLORES,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**<br><br><br>Case No. 2:14-CR-453-DB<br><br>District Judge Dee Benson |

This matter is before the court on defendant's motion to suppress. (Dkt. No. 10). On October 29, 2014, the court conducted an evidentiary hearing on the motion. Defendant Juan Pena-Flores was present with his counsel, Vanessa Ramos. The government was represented by Adam Greenway. Following the hearing, the court ordered a transcript and set a briefing schedule. After review and consideration of the memoranda submitted by the parties, the testimony presented at the evidentiary hearing, and the oral arguments presented by counsel, the court enters the following Memorandum Decision and Order.

## BACKGROUND

The parties do not dispute the underlying facts and the court finds the relevant facts as follows.[1] On August 12, 2014, Officer Swenson was parked along 635 South and 400 West in Salt Lake City when a man pulled alongside him in an SUV. (Tr. at 6, 40). The male driver of the SUV stated that his wife and children had witnessed a dark skinned male, possibly Hispanic,

---

[1] Reference to the transcript of the evidentiary hearing conducted on October 29, 2014, will be cited as "Tr. at __."

riding a purple and white bicycle with a "gun falling out of his waistband." (Tr. at 6-7, 22, 40-41). After receiving this information, Officer Swenson drove in the direction indicated by the SUV driver in search of the individual described until he arrived at 800 South and 600 West. (Tr. at 7-8). Officer Swenson identified an individual (Mr. Pena-Flores) fitting the description offered by the SUV driver. (Tr. at 7-8, 22). He was among a group of people, waiting for a train to pass, and was "a Hispanic man" and the "only one on a purple and white bike." (Tr. at 9). Due to logistics and a train passing, Officer Swenson did not immediately approach Mr. Pena-Flores but instead "watched him for at least a minute or two[.]" (Tr. at 8). The officer "didn't see anything out of the ordinary from the people that were there or from the individual on the bike[.]" (Tr. at 9).

Officer Swenson "pulled up next to [Mr. Pena-Flores] and waved at him trying to get his attention." (Tr. at 9). Officer Swenson activated his rear safety bar lights to maintain traffic safety and avoid injury to himself. (Tr. at 10-12, 22). Officer Swenson continued to wave at Mr. Pena-Flores and called out, "hey, can I talk to you?" (Tr. at 10, 12). Mr. Pena-Flores stopped, took his feet off the pedals, but remained on the bicycle, "sitting essentially as if he were going to ride off again." (Tr. at 12). Officer Swenson explained, "the reason I want to talk to you is that I had some people tell me that they saw you with a gun and that it was falling out of your waistband….[D]o you have a gun?" (Tr. at 12). Mr. Pena-Flores responded "oh, no, no gun" and looked at his waist where the gun was reported to have been hidden. (Tr. at 12-13, 16-17). Officer Swenson then asked Mr. Pena-Flores, "Do you mind if I do a quick search as I am talking to you, for weapons. Do you have a gun?" (Tr. at 12). Mr. Pena-Flores again responded, "no gun, no gun" and looked down at his waistband. (Tr. at 12). Officer Swenson then took Mr.

2

Pena-Flores by the wrists and brought them behind his back while removing him from his bicycle. (Tr. at 17-18). Officer Swenson checked Mr. Pena-Flores for weapons and found a concealed pistol in his waistband and a loaded magazine in his pocket. (Tr. at 18).

On August 27, 2014, Mr. Pena-Flores was charged in a two-count indictment with alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5), and reentry of a previously removed alien, in violation of 8 U.S.C. § 1326. Thereafter, Mr. Pena-Flores moved to suppress "all evidence and statements obtained as a result of the impermissible stop, including but not limited to the firearm and Defendant's identity." (Dkt. No. 10). Mr. Pena-Flores asserts that his encounter with Officer Swenson was not consensual and that the stop and subsequent search for weapons were not supported by reasonable suspicion. (Dkt. No. 19).

## DISCUSSION

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by government actors. *See* U.S. Const. Amend. IV; *United States v. Sanchez*, 89 F.3d 715, 717 (10th Cir. 1996). "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995).

    a. <u>The Initial Encounter</u>

The United States Supreme Court has established that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544 (1980); *See also Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). Further, "[l]aw enforcement officers do not violate the Fourth Amendment by merely

approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions [or] by putting questions to him if the person is willing to listen." *Florida v. Royer*, 103 S. Ct. 1319, 1324 (1983). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Moreover, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Immigration Service v. Delgado*, 104 S. Ct. 1758 (1984). "Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment." *Id.* at 1763. However, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" may indicate that a person has been seized for purposes of the Fourth Amendment. *Mendenhall*, 446 U.S. at 555. *See, e.g., Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (defendant effectively seized for fourth amendment purposes when government agents retained his driver's license and airline ticket); *Pliska v. City of Stevens Point*, 823 F.2d 1168, 1176 (7th Cir.1987) (questioning by officer and request for identification outside the scope of fourth amendment until defendant locked in squad car); *United States v. Pavelski*, 789 F.2d 485, 488–89 (7th Cir.) (individual in an automobile bounded on three sides by police patrol cars not free to leave and thus encounter not consensual), cert. denied, 479 U.S. 917, 107 S.Ct. 322, 93 L.Ed.2d 295 (1986); *United States v. Perate*, 719 F.2d

706, 709 (4th Cir.1983) (squad cars blocking forward and rear path of limousine constituted an investigative detention). Further, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen[,]…a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 34 (1968).

When Officer Swenson initially spoke with Mr. Pena-Flores, he did not use force or a show of authority, nor did he indicate that Mr. Pena-Flores's compliance was compelled. Rather, Officer Swenson flagged down Mr. Pena-Flores by calling out and signaling to him. (Tr. at 9-10, 12). He activated only his rear lights for safety purposes and did not activate his overhead lights to stop Mr. Pena-Flores or to get his attention.(Tr. at 10-12, 22). Mr. Pena-Flores then stopped to talk with Officer Swenson, remaining on his bicycle "as if he were going to ride off again." (Tr. at 12). The circumstances of the encounter were not intimidating—Officer Swenson did not initially touch or restrain Mr. Pena-Flores, did not point a weapon at him, did not block his exit in any way, and did not say anything to Mr. Pena-Flores to indicate that he was being detained. A reasonable person under these circumstances would have believed that he was free to leave. As such, Officer Swenson's initial encounter with Mr. Pena-Flores was consensual and not a seizure under the Fourth Amendment. *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir. 1990) ("A consensual encounter is not a seizure within the meaning of the fourth amendment.").

    b.  <u>The Search</u>

In *Terry v. Ohio*, the United States Supreme Court held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous,…he is entitled…to conduct a carefully limited search…" 392 U.S. 1, 30

(1968). An officer may conduct a *Terry* frisk of a defendant where "specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime." *Werking*, 915 F.2d at 1407. The standard for evaluating whether an officer could have had a reasonable suspicion of illegal activity is an objective one. *United States v. Villa-Chaparro*, 115 F.3d 797, 801-02 (10th Cir.), *cert. denied*, 522 U.S. 926 (1997). Whether a search is supported by reasonable suspicion of illegal activity does not depend upon any one factor but on the totality of the circumstances. *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995). By definition, the totality of the circumstances includes all circumstances known to the officer at the time, as well as reasonable inferences and conclusions that may be drawn by the officer. *Id*. Moreover, in determining reasonableness, the officer's conduct should be viewed with "'common sense' considering 'ordinary human experience.'" *Villa-Chaparro*, 115 F.3d at 801 (quoting *United States v. Sharpe*, 470 U.S. 675, 685 (1985)).

At the evidentiary hearing, Officer Swenson testified to articulable facts and inferences sufficient to objectively give rise to a reasonable suspicion that Mr. Pena-Flores was committing a crime and presently armed and dangerous. Officer Swenson credibly testified that he was approached by a concerned citizen stating that wife and children had witnessed a dark skinned male, possibly Hispanic, riding a purple and white bicycle with a "gun falling out of his waistband." (Tr. at 6-7, 22, 40-41). Officer Swenson headed in the direction indicated by the driver and found Mr. Pena-Flores, who matched the description given by the driver. (Tr. at 8).

The United States Supreme Court has held that an "anonymous tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion…" *Alabama v. White*, 496 U.S. 325 (1990). Under a totality of the circumstances

analysis, predictions of a defendant's location, direction, and mode of transportation may be considered to determine the reliability of an anonymous tipster. *Id*. at 332. However, "reasonable suspicion…requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272 (2000). In *J.L.*, police received an anonymous tip from an anonymous caller at an unknown location stating that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id*. at 268. The United States Supreme Court held that the tip "lacked the moderate indicia of reliability" to support reasonable suspicion to conduct a search for guns. *Id*. at 271.

      The tip in the instant case was more reliable than the anonymous tip in *J.L.* because the SUV driver approached Officer Swenson in person. Although Officer Swenson did not obtain the driver's information, the officer was able to contemporaneously observe the driver and the driver presented himself in such a way that he could be held accountable for a faulty tip, unlike the "unknown, unaccountable informant" in *J.L. Id*. Further, the SUV driver here described an inherently dangerous situation—a "gun falling out of [Mr. Pena-Flores's] waistband"—beyond simply carrying a concealed weapon, the conduct reported by the informant in *J.L.* The Court in *J.L.* noted that the facts of that case did not require the Court "to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability." *Id*. at 273. However, the Court indicated that a heightened threat to safety would justify a lesser indicia of reliability from an anonymous tipster. *Id*. at 273-274. Thus, the SUV driver's information, as confirmed by Officer Swenson's independent investigation, was more reliable and reported more dangerous behavior than the

report in *J.L.* The tip here had a sufficient indicia of reliability to contribute to a finding of reasonable suspicion of criminal activity.

      Mr. Pena-Flores's conduct after he was approached by Officer Swenson also contributed to a finding of reasonable suspicion. When Officer Swenson asked Mr. Pena-Flores if he had a gun, Mr. Pena-Flores twice responded that he did not have a gun and looked down at his waistband. (Tr. at 12-13, 16-17). Alone, this conduct may have been innocuous, but taken in the context of the information that Officer Swenson had received from the SUV driver, Mr. Pena-Flores's repeated glances to his waistband and denials of a weapon were significant. Perhaps prior to the denial, Officer Swenson could reasonably believe that Mr. Pena-Flores was lawfully carrying a concealed firearm. However, when Mr. Pena-Flores lied to Officer Swenson, stating that he did not have a gun and then looking at his waistband, Officer Swenson had reasonable suspicion that Mr. Pena-Flores not only had a gun, but that the gun was concealed in his waistband unlawfully. Under a "common sense" analysis considering "ordinary human experience," *Villa-Chaparro*, 115 F.3d at 801 (quoting *United States v. Sharpe*, 470 U.S. 675, 685 (1985)), Officer Swenson had reasonable suspicion to conduct a *Terry* frisk of Mr. Pena-Flores.

## Conclusion

Based on the foregoing, the evidence Defendant seeks to suppress was obtained as a result of a consensual conversation and a subsequent lawful search. Defendant's motion to suppress is therefore DENIED.

It is so ordered.

DATED this 9th day of January, 2015.

BY THE COURT:

*/s/ Dee Benson*

Dee Benson
United States District Judge